UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEDISIA UJKA

                Plaintiff,

                -v.-

ALEJANDRO MAYORKAS, *Secretary, U.S. Department of Homeland Security*; THOMAS CIOPPA, *District Director*; UR M. JADDOU, *Director of U.S. Citizenship and Immigration Services*; and MERRICK BRIAN GARLAND, *Attorney General*,

                Defendants.

24 Civ. 4801 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

       Plaintiff Ledisia Ujka filed an asylum application (Form I-589) with United States Citizenship and Immigration Services ("USCIS") on May 24, 2022. Her application has not been adjudicated and remains pending. Plaintiff initiated this action against Alejandro Mayorkas, the former Secretary of the United States Department of Homeland Security; Thomas Cioppa, a former New York District Director of USCIS; Ur M. Jaddou, former Director of USCIS; and Merrick Brian Garland, former United States Attorney General (together, "Defendants"), alleging that Defendants failed to adjudicate Plaintiff's asylum application within a reasonable period of time.[1] Accordingly, Plaintiff brings claims under the Mandamus Act, 28 U.S.C. § 1361; the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 555-559, 701-706; the Declaratory

---

[1]     If this case had continued, the current holders of the respective positions would have been substituted in for Defendants. *See* Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officer with successor).

Judgment Act, 28 U.S.C. § 2201; and the Equal Access to Justice Act ("EAJA"),
5 U.S.C. § 504 and 28 U.S.C. § 2412.  Plaintiff requests that this Court
(i) assume jurisdiction over this case; (ii) declare that Defendants' failure to
adjudicate her asylum application is illegal, arbitrary and capricious, and an
abuse of discretion; (iii) compel Defendants to adjudicate Plaintiff's asylum
application; (iv) award Plaintiff attorney's fees and costs of court; and (v) grant
further relief this Court deems just and appropriate.

Pending before the Court is Defendants' motion to dismiss Plaintiff's First
Amended Complaint (the "FAC") pursuant to Federal Rules of Civil Procedure
12(b)(1) and 12(b)(6).  In ruling on this motion, the Court in no way minimizes
Plaintiff's concerns about the Defendants' protracted review of her asylum
application or her interest in having that application adjudicated in a timely
manner.  Nonetheless, for the reasons that follow, the Court grants Defendants'
motion to dismiss in full.

## BACKGROUND[2]

### A.    Statutory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. Ch. 12, permits
non-citizens physically present in the United States to apply for asylum,

---

[2]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #4)), the
well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See
Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

For ease of reference, the Court refers to Defendants' memorandum of law in support of
their motion to dismiss as "Def. Br." (Dkt. #14); to Plaintiff's memorandum of law in
opposition to the motion to dismiss as "Pl. Opp." (Dkt. #17); and to Defendants' reply
memorandum of law in further support of the motion to dismiss as "Def. Reply" (Dkt.
#18).

irrespective of their immigration status.  8 U.S.C. § 1158(a)(1).[3]  The Secretary of Homeland Security or the Attorney General may grant asylum to applicants who meet the definition of "refugee within the meaning of section 1101(a)(42)(A) of [Title 8]."  *Id.* § 1158(b)(1)(A).  That is, the applicant must establish past persecution or a well-founded fear of future persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion.  *Id.* § 1101(a)(42)(A).

The INA directs the Attorney General to set forth a procedure for the consideration of asylum applications.  8 U.S.C. § 1158(d)(1).  At the same time, it provides that "in the absence of exceptional circumstances, the initial interview or hearing … shall commence not later than 45 days after the date an application is filed," and, further, that "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed.  *Id.* § 1158(d)(5)(A)(ii), (iii). Importantly, § 1158(d)(7) — entitled "No private right of action" — expressly states that "[n]othing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).  Finally, § 1158(d)(2) provides that an asylum seeker may apply for employment authorization to work legally in the United States while her asylum application is pending.  *Id.* § 1158(d)(2); 8 C.F.R. § 208.7(a).

---

[3]    This statute addresses those persons seeking asylum affirmatively before USCIS.  A non-citizen may also seek asylum defensively during removal proceedings in immigration court.  *See generally* 8 C.F.R. Part 1208.

## B.    Factual Background

Plaintiff Ledisia Ujka filed an asylum application (Form I-589) on May 24, 2022.  (FAC ¶ 5).  She received an "Acknowledgement of Receipt" from USCIS on August 12, 2022.  (*Id.* ¶ 10).  However, Plaintiff avers that "[s]ince then, USCIS has taken no action on the instant case, and the matter remains pending."  (*Id.* ¶ 11).  Plaintiff contends that "a major factor that [she] relied upon [in filing her application] was President Trump's reinstatement of the 'Last in First Out Rule'" for adjudicating applications (*id.* ¶ 8), as well as "USCIS claims of expeditious adjudication of meritorious asylum claims" (*id.* ¶ 9).

According to the FAC, Plaintiff's father — a politician and public figure in opposition to the current government of Albania — was murdered on November 19, 2021.  (FAC ¶ 21).  Plaintiff contends that she participated in public interviews regarding the murder in February 2022, and thereafter "was forced to leave the country."  (*Id.* ¶¶ 23-24).  In the United States, Plaintiff continues to do such interviews "to attempt to bring her father's killer to justice."  (*Id.* ¶¶ 25-26).

Plaintiff believes "[s]he is in danger and needs to know if the United States will protect her."  (FAC ¶ 28).  What is more, Plaintiff asserts that "[i]n addition to the unique danger she is in," she is negatively affected by the uncertainty the delay in her asylum application presents, including in her employment prospects and in decisions about where to buy a home or attend school, and that such uncertainty has caused her psychological and emotional

distress.  (*Id.* ¶¶ 29-33).  Furthermore, Plaintiff states that "[l]ong delays can lead to credibility concerns in the asylum process" as "memories fade" and circumstances in the United States or Plaintiff's home country may change. (*Id.* ¶¶ 37-40).  In consequence, Plaintiff determined to bring this action just over two years and one month after she filed her asylum application.  (*Id.* ¶ 12).

## C.    Procedural Background

Plaintiff filed her initial complaint on June 24, 2024 (Dkt. #1), and the FAC the following day (Dkt. #4).  On August 27, 2024, Defendants requested a pre-motion conference in anticipation of filing the instant motion.  (Dkt. #10). The Court held the pre-motion conference on October 3, 2024, at which time a briefing schedule was set.  (October 3, 2024 Minute Entry).

Defendants filed their motion to dismiss and supporting papers on December 6, 2024.  (Dkt. #13, 14).  Plaintiff filed her opposition on January 13, 2025.  (Dkt. #17).  Defendants then filed a reply brief in further support of their motion on January 24, 2025, at which time the instant motion was fully briefed.  (Dkt. #18).

## DISCUSSION

## A.    Applicable Law

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."

*Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has distinguished between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions.  *See Carter* v. *HealthPort Techs.*, *LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017); *accord Lugo* v. *City of Troy, New York*, 114 F.4th 80, 87 (2d Cir. 2024).  A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it[.]"  *Carter*, 822 F.3d at 56.  A plaintiff opposing such a motion bears "no evidentiary burden."  *Id.*  Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)) (internal quotation marks omitted).  And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff."  *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]."  *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Republic of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter

jurisdiction").  "In opposition to such a motion, [a plaintiff] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing."  *Katz*, 872 F.3d at 119 (internal citations and quotation marks omitted) (second alteration in original).  If a defendant supports her fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to standing."  *Carter*, 822 F.3d at 57.

### 2.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007))); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to

nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks and alterations omitted)).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*[4]

## B.    Analysis

Defendants argue that the Court should dismiss each of Plaintiff's claims under either Rule 12(b)(1) or Rule 12(b)(6). Specifically, Defendants seek to dismiss Plaintiff's mandamus claim for lack of subject matter jurisdiction under Rule 12(b)(1), and to dismiss Plaintiff's APA and declaratory judgment claims for failure to state a claim under Rule 12(b)(6). The Court addresses each of Plaintiff's claims in turn.

---

[4]    "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). Even if a document is deemed "integral" to the complaint, there must be no dispute regarding its authenticity, accuracy, or relevance. *Id.*

Here, the Court does not consider the declarations Defendants submitted with their motion papers. (*See generally* Declaration of John L. Lafferty ("Lafferty Decl." (Dkt. #14-1)); Declaration of Nashwati Nirahu ("Nirahu Decl." (Dkt. #14-2))). *See also Fangfang Xu* v. *Cissna*, 434 F. Supp. 3d 43, 50 n.3 (S.D.N.Y. 2020) (declining to consider a declaration on the basis that it was not integral to the complaint).

### 1.    The Court Lacks Subject Matter Jurisdiction over Plaintiff's Mandamus Claim

Plaintiff seeks a writ of mandamus to compel Defendants to adjudicate her Form I-589 asylum application.  (FAC 11).  Defendants move to dismiss Plaintiff's mandamus claim under Rule 12(b)(1) for lack of subject matter jurisdiction.  (Def. Br. 11-13).  The Court finds that Defendants are correct — the Court lacks subject matter jurisdiction over Plaintiff's mandamus claim.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt." *Keane* v. *Chertoff*, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006) (internal quotation marks omitted).  In other words, "[m]andamus is an extraordinary remedy that requires a showing of a clear and indisputable right to its issuance."  *Abdiev* v. *Garland*, No. 23 Civ. 8091 (DEH), 2024 WL 3742545, at *2 (S.D.N.Y. Aug. 9, 2024) (internal quotation marks omitted).  To obtain relief, a plaintiff must show that "[i] there is a clear right to the relief sought; [ii] the Government has a plainly defined and peremptory duty to perform the act in question; and [iii] there is no other adequate remedy available."  *Benzman* v. *Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).  Plaintiff fails to establish either a clear right to the relief sought or a corresponding duty on the part of Defendants.

Plaintiff contends that Defendants have "a duty to act within a reasonable time" in adjudicating her application and that their failure to do so

is "in violation of [her] rights." (FAC ¶¶ 46-48). Defendants concede they have "a duty to adjudicate [Plaintiff]'s asylum application," but disagree that they have a duty to do so within the timelines set forth in 8 U.S.C. § 1158(d)(5)(A)(ii) and (iii). (Def. Br. 11-12). While the FAC is clear as to the relief it seeks — namely, a writ of mandamus requiring Defendants to adjudicate Plaintiff's asylum application — it is less clear as to the precise rights on which Plaintiff predicates her claims for such relief. The FAC references both the timeline set forth in 8 U.S.C. § 1571,[5] as well as the APA's directive for agencies to conclude a matter presented "within a reasonable time."[6] (*Id.* ¶¶ 13-14).

In her opposition brief, Plaintiff seemingly seeks to enforce the timeline set forth in Title 8: "Plaintiff has a legally enforceable right and Defendants owe a duty to adjudicate h[er] application within the time frames." (Pl. Opp. ¶¶ 57-60 (citing 5 U.S.C. § 1158(d)(5)(A)(ii)-(iii))). Plaintiff argues that she is within the "zone of interest" of the INA. (*Id.* ¶¶ 50-52 (citing *Giddings* v. *Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992))).[7] However, the same provision in the INA that sets forth these time frames, 8 U.S.C. § 1158(d)(5)(A), also recites that "[n]othing in this subsection shall be construed to create any substantive or

---

[5]    Specifically, 8 U.S.C. § 1571(b), which subsection is entitled "Policy," provides for a 180-day timeline.  *See* 8 U.S.C. § 1571(b).

[6]    The Court notes that the provision cited by Plaintiff, 5 U.S.C. § 551, does not contain the quote to which Plaintiff cites.  (*See* FAC ¶ 14). The Court presumes that Plaintiff intended to cite 5 U.S.C. § 555, which does contain that quote.  *Compare* 5 U.S.C. § 551, with *id.* § 555.

[7]    The "zone of interest" test was first articulated by the Supreme Court in *Association of Data Processing Service Organizations, Inc.* v. *Camp*, and it requires that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."  397 U.S. 150, 153 (1970).

procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person," *id.* § 1158(d)(7). In her opposition, Plaintiff states that "[t]he Government is dead wrong in arguing that the time frames are aspirational and that the Plaintiff is not owed a duty from the Government." (Pl. Opp. ¶ 47). But the caselaw is to the contrary, including this Court's opinion in *Fangfang Xu* v. *Cissna*. 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020) ("The Court joins the chorus of other courts across the country in concluding that § 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have her application adjudicated within the provided timeframes." (internal quotation marks omitted and alterations adopted)); *see also Abdiev*, 2024 WL 3742545, at *3 ("Courts in this Circuit have uniformly held that [8 U.S.C. § 1158(d)(7)] bars asylum applicants from establishing that they have a clear right to adjudication within the time periods laid out in § 1158, for purposes of mandamus relief."); *Ngai* v. *Mayorkas*, No. 22 Civ. 5358 (LDH), 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024) ("A legion of courts has held that § 1158(d)(7) unequivocally denies asylum applicants a private right of action to enforce the procedural requirements found in that statute."). Plaintiff, recognizing this "'chorus' of cases," urges the Court to consider that these are merely holdings of sister courts and are not binding on this Court. (Pl. Opp. ¶ 49). While true, this Court finds the overwhelming caselaw from its sister courts to be persuasive.[8]

---

[8]    The Court recognizes a divide in this Circuit in this area. The divide, however, is merely regarding the proper avenue of dismissal for such mandamus claims arising out of delayed adjudications of asylum applications that fail to establish a clear right. Some

"Because § 1158(d) expressly does not create a legally enforceable right or benefit against any officer of the United States or any agency, Defendants do not owe Plaintiff a duty to adjudicate her application within the time frames provided in § 1158(d)." *Xu*, 434 F. Supp. 3d at 57.

For completeness, the Court also analyzes Plaintiff's mandamus claim as if she were seeking relief based upon Defendants' failure to adjudicate her application in a reasonably timely manner in violation of the APA, *see* 5 U.S.C. §§ 555(b), 706(1). So construed, the claim would still fail for two reasons: *First*, it would fail the third prong for a mandamus claim: an alternative adequate remedy would be possible under the APA, so no mandamus claim would be necessary. *See Sharkey* v. *Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that a mandamus claim should be dismissed where it duplicated claims brought under the APA). And *second*, as the Court discusses *infra* at 13-20, Plaintiff has failed to establish that the delay in question violates the APA's directive that review be completed in a reasonable time frame.

Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claim for mandamus relief. *See H.M.G.* v. *Johnson*, 599 F. App'x 396, 397 (2d Cir. 2015) (summary order) (affirming dismissal of a mandamus claim for lack of subject matter jurisdiction where petitioner had "identified neither a clear

---

courts, such as this Court, believe such dismissal should be pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, while others believe dismissal should be pursuant to Rule 12(b)(6) for failure to state a claim. *See Htoo* v. *Mayorkas*, No. 24 Civ. 7514 (JLR), 2025 WL 315828, at *3 (S.D.N.Y. Jan. 28, 2025) (collecting cases). Importantly, however, Plaintiff has failed to identify any instance, and the Court is not aware of any, in which a comparable claim for mandamus relief has survived a motion to dismiss in this Circuit.

right to relief nor a 'plainly defined and peremptory duty' on the part of the
federal agency respondents").

### 2.    Plaintiff Fails to State a Claim Under the APA

Plaintiff also alleges that Defendants have violated the APA in failing to
timely adjudicate her asylum application.  (FAC ¶¶ 57-60).  In particular,
Plaintiff contends that "[b]y failing to render a timely decision" on her asylum
application, Defendants have acted in a manner that is "arbitrary and
capricious and not in accordance with law."  (*Id.* ¶ 58 (citing 5 U.S.C. §§ 701-
706)).  Defendants move to dismiss this claim pursuant to Rule 12(b)(6) for
failure to state a claim.  (Def. Br. 13-20).  For the reasons stated below, the
Court finds that Plaintiff has not adequately stated a claim under the APA.

The APA permits courts to "compel agency action unlawfully withheld or
unreasonably delayed."  5 U.S.C. § 706(1).  However, "[t]he Supreme Court has
held that evidence of the passage of time cannot, standing alone, support [a
claim for unreasonably delayed administrative action]."  *Espin* v. *Gantner*, 381
F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS* v. *Miranda*, 459 U.S. 14, 19
(1982)).  Rather, "[r]esolution of a claim of unreasonable delay is ordinarily a
complicated and nuanced task requiring consideration of the particular facts
and circumstances before the court."  *Mashpee Wampanoag Tribal Council, Inc.*
v. *Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  In conducting this analysis,
courts apply the factors set forth in *Telecommunications Research & Action
Center* v. *FCC* ("*TRAC*") to determine whether an agency action was
unreasonably delayed.  750 F.2d 70, 80 (D.C. Cir. 1984); *see also Nat. Res. Def.*

*Council, Inc.* v. *U.S. FDA*, 710 F.3d 71, 84 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (noting that *TRAC* "set[s] forth [the] test for determining if agency action is unreasonably delayed").  The *TRAC* factors are:

> [i] [T]he time agencies take to make decisions must be governed by a rule of reason; [ii] where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; [iii] delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; [iv] the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; [v] the court should also take into account the nature and extent of the interests prejudiced by delay; and [vi] the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted). "Although no single factor is dispositive, the first and fourth factors generally carry the most weight." *Htoo* v. *Mayorkas*, No. 24 Civ. 7514 (JLR), 2025 WL 315828, at *4 (S.D.N.Y. Jan. 28, 2025) (quoting *Arabzada* v. *Donis*, 725 F. Supp. 3d 1, 13 (D.D.C. 2024) (internal quotation marks omitted)).

As relevant here, Plaintiff avers that "[a] major factor that Plaintiff relied upon" in filing her application for asylum was the first Trump administration's reinstatement of the "Last in First Out Rule" ("LIFO"), which "USCIS claimed … would allow meritorious asylum claims to be adjudicated quickly."  (FAC ¶ 8). However, Plaintiff alleges that she "is raising the question of whether the government created [the current] unreasonable delay in the adjudication of immigration benefits due to the [2016-2020 Trump] administration's behavior

and malfeasance.  If the [2016-2020 Trump] administration illicitly changed the process, then USCIS might not have clean hands."  (*Id.* ¶¶ 16-17).[9]

### a.    The First *TRAC* Factor

The first *TRAC* factor directs courts to examine whether "the time agencies take to make decisions" is governed by a "rule of reason."  *TRAC*, 750 F.2d at 80.  "With respect to the first factor, courts in this Circuit have consistently found that USCIS's use of a LIFO scheduling system ... is a rule of reason for the purposes of the *TRAC* factors."  *Abdiev*, 2024 WL 3742545, at *4; *see also Konde* v. *Raufer*, No. 23 Civ. 4265 (JPC), 2024 WL 2221227, at *3 (S.D.N.Y. May 16, 2024) ("[T]he Court joins the chorus of judges in this Circuit finding that the time USCIS takes to adjudicate asylum applications through its LIFO policy is governed by a rule of reason." (collecting cases)); *Qi* v. *United States Citizenship & Immigr. Servs.*, No. 23 Civ. 8843 (JLR), 2024 WL 2262661, at *5 (S.D.N.Y. May 17, 2024) ("[C]ourts, in this Circuit and elsewhere, have consistently held that the Last-In-First-Out system is a rule of reason for purposes of the first *TRAC* factor." (collecting cases)).  While "[i]t is true that the LIFO rule forces asylum applicants who filed earlier to bear the brunt of th[e] delays," this Court has found that "this is a byproduct of a reasoned attempt to

---

[9]    The Court acknowledges that Plaintiff proffers new allegations as to these changes for the first time in her opposition memorandum. "The Court declines to take these assertions into account because '[n]ew facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered' in deciding a motion to dismiss." *Logfret, Inc.* v. *Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021) (citing *Universal Trading & Inv. Co.* v. *Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012)).

address mounting issues with the asylum application process." *Xu*, 434 F. Supp. 3d at 53.[10]

### b.    The Second *TRAC* Factor

The second *TRAC* factor asks if Congress has provided a timetable that could supply content for the rule of reason. *TRAC*, 750 F.2d at 80. While Congress has provided a timetable for adjudications in § 1158(d)(5)(A), it also provides that such timetables are not enforceable in § 1158(d)(7). "Thus, the Court does not ascribe much significance to this timetable." *Xu*, 434 F. Supp. 3d at 53; *see also Abdiev*, 2024 WL 3742545, at *4 ("The statutory time periods, therefore, do not lead the Court to conclude that the second *TRAC* factor weighs in Plaintiff's favor."); *Baisheng Chen* v. *Wolf*, No. 19 Civ. 9951 (AJN), 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020) ("As the weight of authority on this issue has found, the timetables contained in § 1158(d)(5)(A) do not interfere with finding that the LIFO rule provides a rule of reason, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables rendered them non-binding."); *Konde*, 2024 WL 2221227, at *4 (same).

---

[10]    In their motion to dismiss, Defendants proffer that in addition to the LIFO process — which "continues to be a critical element in managing the affirmative asylum caseload" — in 2024, USCIS instituted a parallel process to address applications "pending in the backlog." (Def. Br. 9). As a court adjudicating a Rule 12(b)(6) motion "must confine its consideration to facts stated on the face of the complaint," *Falls* v. *Campbell*, No. 17 Civ. 35 (KMK), 2019 WL 1255768, at *3 (S.D.N.Y. Mar. 19, 2019), the Court does not consider the newer two-track process in its analysis. However, the Court notes that the two-track process has similarly been found to be a "rule of reason" by courts in this District. *See Chang* v. *Jaddou*, No. 24 Civ. 6565 (JPC) (SLC), 2025 WL 2015143, at *6 (S.D.N.Y. July 18, 2025).

### c.    The Third and Fifth *TRAC* Factors

"Courts analyze *TRAC* factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the 'nature and extent of the interests prejudiced by delay.'" *Arabzada*, 725 F. Supp. 3d at 16 (quoting *TRAC*, 750 F.2d at 80).  Plaintiff avers that the delay in adjudication and the concomitant uncertainty about the outcome of an adjudication have "exacerbated mental health issues such as anxiety, depression, and post-traumatic stress." (FAC ¶ 33).  Plaintiff cites to uncertainty in decisions such as where to purchase a home and attend school, and how to integrate into the community and find employment.  (*Id.* ¶¶ 32, 35-37).  While acknowledging that she has obtained employment authorization, Plaintiff asserts that this does "not cure th[e] problem," since "[e]mployers hesitate to hire and train employees" in her position.  (*Id.* ¶¶ 30-31).  Lastly, Plaintiff contends that the delay can impact her asylum claim as memories fade and circumstances in her home country may improve.  (*Id.* ¶¶ 38-40).

While the Court is sympathetic to Plaintiff regarding the challenges she faces, "this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved." *Xu*, 434 F. Supp. 3d at 54.  Furthermore, "[w]hile delay and uncertainty are certainly anxiety-producing, Plaintiff is deemed lawfully present in the United States, has employment authorization, and can seek travel authorization if [s]he needs to travel abroad for humanitarian reasons or significant public benefit." *Htoo*, 2025 WL 315828, at *5.

Plaintiff also alleges she is in "unique danger" as a result of her participation in interviews regarding her father's murder (FAC ¶¶ 26-29), and that "[t]his continued time in the limelight puts her in a unique position that other asylum seekers are not in" (*id.* ¶27). But Plaintiff does not explain how the *delay* in adjudicating her application exacerbates these concerns, as she can legally live and work in the United States pending adjudication. *See Chen*, 2020 WL 6825681, at *5 (finding that while plaintiff expressed concern for his safety, he did not adequately allege a non-conclusory nexus between the delay in adjudication and that concern); *see also Alaei* v. *Holder*, No. 15 Civ. 8906 (ODW) (JPRx), 2016 WL 3024103, at *3 (C.D. Cal. May 26, 2016) ("[T]here is no human health and welfare at stake in the delay as Plaintiff can legally live and work in the United States pending adjudication of her application."). As a result, the Court concludes that these factors do not tip in Plaintiff's favor.

### d.    The Fourth *TRAC* Factor

The fourth factor instructs a court to consider "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. On this point, Defendants argue that "[j]udicial intervention in this case would result in both unwarranted 'line-skipping' and the prospect that applicants with the means to hire counsel or file a federal lawsuit will obtain preferential treatment in the adjudication process." (Def. Br. 19). The Court agrees.

"A court may deny relief on this factor alone where a judicial order putting the petitioner at the head of the queue would simply move all others

back one space and produce no net gain." *Lin* v. *Mayorkas*, No. 24 Civ. 1403 (RER), 2025 WL 1884304, at *5 (E.D.N.Y. July 7, 2025) (internal quotation marks omitted); *see also Sunny* v. *Biden*, No. 21 Civ. 4662 (BMC), 2023 WL 5613433, at *3 (E.D.N.Y. Aug. 30, 2023) (finding the fourth factor to be dispositive).  Indeed, "[t]he effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication." *Xu*, 434 F. Supp. 3d at 55.  Numerous courts have similarly declined to grant relief when it would have the effect of granting preferential treatment at the expense of other applicants.  *See Htoo*, 2025 WL 315828, at *6 (collecting cases); *see also Abdiev*, 2024 WL 3742545, at *4 ("With respect to the fourth *TRAC* factor … the Court declines to grant relief with respect to any one asylum application, even long-pending ones such as Plaintiff's, because of the effect that such relief would have on similar applications.").  This Court agrees that "[t]o grant priority would push others further back in line when the only difference between them and plaintiff[ ] is that plaintiff[ ] brought a federal lawsuit." *Cheng*, 2024 WL 5009146, at *4 (quoting *Sunny*, 2023 WL 5613433, at *3).

### e.    The Sixth *TRAC* Factor

"The sixth factor clarifies that foul play is not a prerequisite for the court to determine an unreasonable delay." *Lin*, 2025 WL 1884304, at *5.  In her FAC, Plaintiff merely "rais[es] the question" of whether the delay in adjudicating her application was due to "malfeasances."  (FAC ¶ 16).  This is plainly

insufficient to "nudge[ ]" plaintiff's ponderance of impropriety "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Lin*, 2025 WL 1884304, at *5 ("Here, [plaintiff] alleges impropriety, but only through the kind of bare-naked assertions and conclusory statements that fail to constitute a plausible claim.").

Having considered the *TRAC* factors, the Court concludes that Plaintiff has failed to state a claim under the APA that the adjudication of her asylum application was unreasonably delayed or was not adjudicated in a reasonable time. 5 U.S.C. §§ 555(b), 706(1). In so doing, the Court notes that the two-year period of delay between the filing of Plaintiff's application and the instant FAC, while not insubstantial, is considerably less than the amount of time other courts have found not to be unreasonable. *See Cheng*, 2024 WL 5009146, at *5 (collecting cases with nearly five-year delays).

The Court notes, however, that "[a]t some point, Defendants' continued failure to act on Plaintiff['s] asylum application, if it continues, may be so severe as to give rise to an APA violation." *Abdiev*, 2024 WL 3742545, at *5. Therefore, this Court dismisses Plaintiff's APA claim without prejudice to renew. *See Konde*, 2024 WL 2221227, at *5.[11]

---

[11]    Plaintiff also claims that discovery into USCIS's processes is necessary. (Pl. Opp. ¶ 31). The Court denies this request. *See Sheiner* v. *Mayorkas*, No. 21 Civ. 5272 (ER), 2023 WL 2691580, at *11 n.12 (S.D.N.Y. Mar. 28, 2023) ("'[T]he weight of authority appears to cut in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery.'" (quoting *Telles* v. *Mayorkas*, 21 Civ. 395 (TJK), 2022 WL 2713349, at *3 n.3 (D.D.C. July 13, 2022))).

### 3.    The Court Lacks Subject Matter Jurisdiction over Plaintiff's Declaratory Judgment Act Claim

Finally, Plaintiff seeks a declaration pursuant to the Declaratory Judgment Act that Defendants violated the INA, breached their statutory duties, and violated the Constitution.  (FAC ¶¶ 61-64).  But the "Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts."  *Correspondent Servs. Corp.* v. *First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (citing 28 U.S.C. § 2201(a)).  Therefore, for the Court to issue a declaratory judgment, some other independent basis of jurisdiction must exist.  *Id.*  For the reasons stated above, none of Plaintiff's other claims survives the pending motion to dismiss.  Thus, the Court lacks an independent basis for jurisdiction and lacks subject matter jurisdiction over Plaintiff's declaratory judgment claim.  *See, e.g., Xu*, 434 F. Supp. 3d at 60-61 (dismissing plaintiff's claim under the Declaratory Judgment Act for want of jurisdiction as all of plaintiff's other claims were dismissed).[12]

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  Plaintiff's APA and Declaratory Judgment Act claims are dismissed without prejudice to their renewal should Plaintiff's application remain pending for a period of time that becomes unreasonable; Plaintiff's mandamus claim is

---

[12]    Plaintiff also seeks relief under the Equal Access to Justice Act ("EAJA").  In light of the dismissal of Plaintiff's other claims, this claim is also dismissed.  *See Maxhuni* v. *Mayorkas*, No. 23 Civ. 9076 (DEH), 2024 WL 3090165, at *4 (S.D.N.Y. June 20, 2024).

dismissed with prejudice.  The Clerk of Court is directed to terminate all

pending motions, adjourn all remaining dates, and close this case.

      SO ORDERED.

Dated:     August 21, 2025
          New York, New York

                                              _____
                                            KATHERINE POLK FAILLA
                                      United States District Judge